## LATHE *v.* SCHOFF.

The place where personal property is used day after day, where it is stored or housed when not in actual use, and where the business in which it is employed is done, is the place where it is situate, within the meaning of Gen. Laws, c. 137, s. 5, designating the town in which a mortgage of personal property shall be recorded when the mortgagor resides out of the state.

A mortgage of personal property situate in this state, executed and recorded under the provisions of Gen. Laws, c. 137, is valid against creditors of the mortgagor without change of possession, notwithstanding, according to the law of the state in which he resides, a chattel mortgage is invalid against creditors of the mortgagor if he retains possession of the property.

TROVER, for two horses. Facts found by a referee. In June, 1878, Samuel H. Lathe, a brother of the plaintiff, living in Maidstone, Vt., went to Bethlehem, N. H., and engaged in the livery business at that place, with the intention of continuing therein during the season of summer travel, about three months, for the ensuing three years. For that purpose he rented a livery stable at Bethlehem for three years, and bought carriages, harnesses, and horses, including the horses in dispute. He retained his domicile in Vermont, where he intended to reside except during the season of summer travel. He bought the horses more particularly for use in New Hampshire, but intended to use them also in Vermont. September 4, 1878, he gave the plaintiff a mortgage upon all of his livery stock, including the horses in dispute, executed, sworn to, and recorded in Bethlehem, where the property was and had been for nearly three months. About the middle of September he returned to Vermont, taking the horses with him, where they were seized while in his possession by the defendant, a sheriff, and sold on an execution issued against him. By the laws of Vermont a chattel mortgage, without change of possession, is invalid as against creditors of the mortgagor.

*Sulloway & Topliff,* for the plaintiff.

The mortgage is valid. *Sargent* v. *Usher,* 55 N. H. 287; *Ferguson* v. *Clifford,* 37 N. H. 86; *Stevens* v. *Norris,* 30 N. H. 466; *Smith* v. *Godfrey,* 28 N. H. 379; *Morse* v. *Powers,* 17 N. H. 286; *Bliss* v. *Houghton,* 13 N. H. 126; *Bank* v. *Colby,* 12 N. H. 520; *Offutt* v. *Flagg,* 10 N. H. 46; *French* v. *Hall,* 9 N. H. 137. At the time *Smith* v. *Moore,* 11 N. H. 55, was decided, there was no statute authorizing the record of a chattel mortgage, when the mortgagor resided out of the state.

*Ray, Drew & Jordan*, for the defendant.

The horses were in Bethlehem temporarily. The owner intended to take them back to Vermont. They were not liable to be taxed in this state. *Hays* v. *Company*, 17 How. 596; *Morgan* v. *Parham*, 16 Wall. 471; *St. Louis* v. *Ferry Co.*, 11 Wall. 423; *Case of State Tax on Foreign-held Bonds*, 15 Wall. 300; *Hoyt* v. *Tax Com'rs*, 23 N. Y. 224. Personal property is subject to the law of the owner's domicile with respect to its disposition. *Heydock's Appeal*, 7 N. H. 502.

BINGHAM, J. By the law of Vermont, a chattel mortgage is invalid as against creditors of the mortgagor if the property remains in his possession. But in this state a chattel mortgage is valid against every one if made in the manner prescribed by statute and recorded in the office of the clerk of the town in which the mortgagor resides, or, when the mortgagor resides out of the state, if recorded in the town in which the property is situate. G. L., c. 137. The defendant claims that the horses in dispute were not situate in Bethlehem, where the mortgage was recorded, because they were there temporarily, their owner intending at some future time to return with them to Vermont. For some purposes, by a legal fiction, a chattel is regarded as having a *situs* in the town in which its owner resides, although in fact it is in another town. But this is by no means a universal rule. When the mortgagor of a chattel resides out of the state, the statute authorizes a record of the mortgage to be made in the town in which the chattel is situate, meaning its actual location, and not its owner's domicile. Of course a short stay of movables during their transit through a place is not within its meaning. But in an ordinary sense movables are situate in a place where they are used day after day, where they are stored, housed, or stabled when not in actual use, and where the business in which they are employed is done. To the ordinary observation of people for whose protection and information the statute was intended, that is their location. Generally, the disposition of movables is governed by the law of the owner's domicile, and not by the law of their local situation. Sto. Conf. Laws, s. 367. Convenience in commercial transactions requires this rule, because it would be impossible for a merchant to familiarize himself with the local laws of every country through which his property might pass. It is not considered that the law of the owner's domicile overrides the law of the place where the property is actually located; but the courts of the latter adopt with reference to that property the law of the former, and administer it according to a principal of comity. This is regularly true unless there is some positive or customary law of the country where the property is situate providing for special cases. Sto. Conf. Laws, s. 333. The statute in question creates an

exception of this kind by providing that personal property may be mortgaged in the manner prescribed, although the owner lives out of the state. A contract made at the domicile of the owner, and presumably with reference to its laws, is to be distinguished from a contract made in the place where the property to which it relates is located, and with express reference to the laws of that place. Story says, although it is a general rule that a transfer of personal property, valid by the law of the owner's domicile, is valid wherever else the property is situate, it does not follow that a transfer made by the owner according to the law of the place of its actual *situs* would not as completely divest his title, although he might not have his domicile there. A person may doubtless transfer his property according to the law of his domicile wherever the property may be. But if he should sell it in a foreign country where it is situate, according to the laws thereof, the sale is valid. Sto. Conf. Laws, *s.* 384. Lathe mortgaged the horses in question with express reference to the laws of this state. In *Cammell* v. *Sewell*, 5 H. & N. 728, the master of a vessel wrecked on the coast of Norway had sold a part of the cargo, as by the law of that country he was authorized to do. The goods sold were afterwards sent to England, where they were claimed by their original owner. It was held that the sale of the goods by the authority of the law of the country where they were located was valid against the British owner, although such a sale would be invalid according to the laws of England. The sale was made without the owner's consent, and was nevertheless declared valid by the courts of his domicile. In this case the mortgage was the voluntary contract of the owner made in New Hampshire with express reference to its laws, and the question of validity is raised in its own courts. *Zipcey* v. *Thompson*, 1 Gray 243. The plaintiff, a creditor of the owner, could acquire a lien, in this state, by mortgage as well as by attachment: his mortgage, valid in this state, was valid in Vermont, and the defendant's subsequent attachment was no better than the title of one who purchases mortgaged property from the mortgagor without the consent of the mortgagee.

*Judgment for the plaintiff.*

FOSTER, J., did not sit : the others concurred.