[File No. 6254.]

EDWARD A. MAERCKLEIN, Respondent, v. WALTER H. MAERCKLEIN and The First National Bank of Oakes.

THE FIRST NATIONAL BANK OF OAKES, Appellant.

(256 N. W. 180.)

Opinion filed August 11, 1934.

*Kvello & Adams,* for appellant.

*Hugo P. Remington,* for respondent.

Burr, Ch. J.   This is a contest between plaintiff and the defendant bank for priority of respective chattel mortgages on some sheep.

While a trial de novo was demanded there is little if any dispute as to the facts.

Plaintiff Edward Maercklein and defendant Walter H. Maercklein are brothers.   Prior to 1927 defendant Maercklein and his brother-in-law, Paul Schroeter were co-partners in farming operations.   Among other personal property the co-partnership owned 120 to 130 ewes. In September 1927 the co-partnership was purchasing a farm and to complete the deal borrowed one thousand dollars from the plaintiff. As evidence of the loan to the co-partnership the plaintiff took a promissory note dated September 13, 1927 and due in a year, with interest. This note was signed by defendant Maercklein only.   As security for payment defendant Maercklein gave a chattel mortgage on "one hundred ewes, being all the ewes I now own, together with the increase of the same."   These sheep were owned by the co-partnership and were part of the co-partnership sheep flock.   They were not segregated, nor earmarked, nor pointed out to the plaintiff.   This chattel mortgage was filed September 24, 1927 and is the basis of plaintiff's claim.

October 24, 1927 defendant Maercklein borrowed $1,050.00 from the Agricultural Credit Corporation in Minneapolis, and as security for the payment of this sum gave a chattel mortgage upon "110 head of white faced ewes, each two years old.   20 head of white faced ewes, each one year old.   Also the wool from the above described sheep, their increase during the life of this mortgage  .  .  .  ," intending by this a mortgage on the sheep mortgaged to his brother.   The application for the loan was prepared by F. D. McCartney, the vice president of defendant bank, and he signed the mortgage as witness.

September 10, 1928 the co-partnership, being indebted to the defend-

ant bank, gave its note for $1,476.00 due January 10, 1929 and as security for payment gave a chattel mortgage on "240 head of sheep" besides some cattle and hogs. Some payments were made and on October 28, 1929 a renewal note for $915 was given with a chattel mortgage on "240 head of sheep of various sizes, colors and sex" to secure the same. Another renewal note was given May 2, 1931 and a chattel mortgage on "125 head of ewes, 2 bucks, 80 lambs." Other stock were also included. On May 31, 1932 another renewal note was given with a chattel mortgage on "140 ewes, 85 lambs and the increase together with other chattel property to secure the same." In each case both partners signed the notes and mortgages.

There is no dispute as to the amounts which the co-partnership owes the plaintiff and the bank.

The trial court found that the chattel mortgage given by defendant Maercklein to his brother was given with the consent of the brother-in-law, the co-partner; that it was given for partnership purposes and was in fact a partnership mortgage. The trial court further found that there were enough circumstances surrounding the whole transaction to put the defendant bank upon inquiry as to the ownership of the property described in the plaintiff's chattel mortgage, and therefore plaintiff's mortgage was superior to that of the defendant bank.

The record shows plaintiff's mortgage was executed by defendant Maercklein, with the advice and consent of his co-partner, was given upon partnership property and for partnership purposes. The money obtained was used in the purchase of a farm for the partnership. Under our statute, § 6403 of the compiled laws: "Every general partner is agent for the partnership in the transaction of its business and has authority to do whatever is necessary to carry on such business in the ordinary manner and for this purpose may bind his co-partners by an agreement in writing." Defendant Maercklein was a "general partner." His execution of the mortgage was necessary to carry on the business for which the partnership was formed. His act, therefore bound the partnership. First Guaranty Bank v. Rex Theatre Co. 50 N. D. 322, 328, 195 N. W. 564. As between the parties the description of property mortgaged as "being all the ewes I now own, together with the increase of same," is sufficient. See First State Bank v. Dahly, 54 N. D. 309, 209 N. W. 655. Hence plaintiff has a valid mortgage

on the partnership property, as against any claim of either of the partners.

But when the general partner Maercklein executed the note and mortgage he did not sign the partnership name. The only signature is "Walter H. Maercklein." There is nothing in the signature on the note or on the mortgage to indicate to a third person in any way that the partnership, either by itself or through a general partner, was mortgaging the partnership property; or to indicate in any way that Maercklein was giving other than a personal obligation of his own, and securing it by a mortgage on his own individual property. Hence it is incumbent upon the plaintiff to show that the defendant bank knew, or, had it made the required investigation, would have learned that the mortgage was not what it purports to be—an individual affair—but was in fact the obligation of the partnership and covering partnership property.

There is no question but what the partnership executed the mortgage given to the bank. Had the bank officials examined the records in the office of the register of deeds they would not have learned that the "co-partnership" had given a chattel mortgage to plaintiff. They would have found a chattel mortgage executed by the defendant Maercklein personally upon property which he stated therein was his own. It is true the record shows that the bank knew there was a partnership existing between the defendant and his brother-in-law; but there is nothing to indicate the bank knew or should have known that the defendant Maercklein had no independent property of his own.

Plaintiff says the vice president of the bank prepared the application defendant Maercklein made to the Agricultural Credit Corporation and witnessed the execution of a chattel mortgage upon sheep and that this was sufficient to put the bank upon inquiry. However, all the bank could have learned would be what the mortgage itself indicated. The inquiries required are merely those the instrument itself suggests. Teigen v. Occident Elevator Co. 51 N. D. 563, 200 N. W. 38. It would have found that, though it knew defendant Maercklein and his brother-in-law were co-partners in a farming deal, the defendant Maercklein was also purporting to give individual mortgages.

Plaintiff's mortgage says the sheep were "on the N. E. ¼ of Section

25, Township 131, Range 61;" and the bank's mortgage says the sheep were "situated on —— of Section ——, Township 131, Range 61." Plaintiff says this statement in his mortgage was sufficient to suggest inquiry on the part of the bank. We do not view it in this light. The plaintiff knew, when he took his chattel mortgage, that the property was partnership property. Yet he permitted his brother to execute the note and the mortgage and describe himself therein as if he were the sole owner. Plaintiff filed this mortgage to give notice to subsequent encumbrances; but the only notice which subsequent encumbrancers obtained through the filing was what they would have known or should have learned if they had seen the instrument. "It was constructive notice of no more than it contained." Hellstrom v. First Guaranty Bank, 54 N. D. 322, 330, 209 N. W. 329. Had the bank seen the instrument it would not have seen anything therein to point out that defendant Maercklein was mortgaging partnership property and not his own, or that he was purporting to act for the partnership. Neither did plaintiff's mortgage point out any means whereby the precise things mortgaged could be identified. Unless so described the filing is not notice. Teigen v. Occident Elevator Co. supra.

In the mortgage to the plaintiff the property is described as "one hundred ewes being all the ewes I now own." Concededly this did not cover all of the partnership sheep, but nothing was done looking toward segregation or identification. Six weeks later, in the mortgage to the Agricultural Credit Corporation witnessed by the vice president, the defendant Maercklein gave a personal chattel mortgage on 130 ewes which he said were his own property. A year afterwards the co-partnership gave its mortgage to the defendant bank mortgaging "240 head of sheep," belonging to the co-partnership. The description of the ewes set forth in plaintiff's mortgage, if inquiries naturally suggested by the mortgage itself would lead to identification of the property, is sufficient notice to subsequent encumbrances, when the mortgage is filed. Reynolds v. Strong, 10 N. D. 81, 85 N. W. 987, 88 Am. St. Rep. 680. But the description given in plaintiff's mortgage is of property personally owned by the defendant Maercklein. Had there been a subsequent contest between plaintiff and the Agricultural Credit Corporation, each attempting to foreclose upon unidentified property of

Maercklein, the plaintiff would be in position to say to the creditor corporation "You were receiving a personal mortgage from Maercklein on his own personal property; you knew he had given me a personal mortgage on sheep personally owned by him and it was your duty to inquire of him regarding the sheep he was mortgaging." But defendant bank was not getting a personal mortgage from the defendant Maercklein on property owned by him. It was getting a partnership mortgage on partnership property which it knew was owned by the partnership. The sufficiency of the description must be determined by the character of the property when identity is involved. Reynolds v. Strong, supra.

The trial court in an exhaustive memorandum opinion says: "All of the mortgages taken by the bank indicate that the property was in township 131, range 61, Dickey county, and the mortgage of the plaintiff recites that the property was on the NE¼ of 25-131-61. Dickey county. The bank officers must have known that that property was occupied by Paul C. Schroeter and Walter H. Maercklein, the co-partners, and that it was a co-partnership venture, and that the property must necessarily be the same identical property, and at least the bank should have inquired, and not having inquired, as between two innocent people the one in fault should suffer."

However there is nothing in the record showing that the bank officials "must have known" that the copartnership was occupying this property, that it was a co-partnership venture, and that the property described in the two mortgages was the same property.

The defendant Maercklein testifies that he had a conversation with the vice president of the bank in which the vice president said that the plaintiff "had a first mortgage and he wanted to know the reason why I did that;" but he says that this was in December 1929 and some time after the dissolution of the partnership. There was nothing in this conversation to put the bank on inquiry when it took its mortgage October 1929 and it is conceded that the claim of the defendant bank is based upon the note and mortgage given October 1929, the other mortgages being renewals. There is no proof that the bank had any actual notice, or notice of any kind except such as was given by the filing of the mortgage.

We hold with the trial court that both plaintiff's and defendant's

mortgages are valid mortgages but are constrained to hold that defendant's mortgage is superior to that of the plaintiff, and so judgment will be entered accordingly.

BURKE, NUESSLE, MOELLRING and CHRISTIANSON, JJ., concur.